IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WAYNE SPEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:05-CV-663-MEF |
| | ) | [WO] |
| | ) | |
| AVERY MARSH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Jeffrey Wayne Spear ["Spear"], a former city inmate, in which Spear alleges constitutional violations related to arrests and previous confinements in the city jail of Alexander City, Alabama during 2005.[1]  Specifically, Spear contends that the defendant law enforcement

---

[1]The pleadings indicate that the actions which form the basis of the instant complaint occurred prior to Spear's conviction for any charged offense and, therefore, relate to incidents which happened during his status as an arrestee/pretrial detainee.  The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon/actions taken against a detainee are violative of the Constitution.  *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause," and require a showing of deliberate indifference to a substantial risk of serious harm.").  However, for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment.  *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492 (1986); *Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.").  Thus, this court will rely on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourth Amendment's protections against excessive force, and not the Fourteenth Amendment's guarantee of due process, when addressing the plaintiff's claims for relief because the standard

officials (i) failed to provide him with adequate medical treatment, (ii) denied him access to the court, (iii) used excessive force against him, and (iv) subjected him to unconstitutional conditions of confinement. Spear further complains that Randall Haynes, a municipal judge, failed to enter appropriate orders related to his requests for mental health treatment. Spear names Avery Marsh, chief of the Alexander City Police Department, Willie Robinson, a captain with the police department and administrator of the city jail, and Steve Richardson, Jerry Whetstone and Eddie Williams, officers with the Alexander City Police Department, Louise Pritchard, a municipal court clerk, and Judge Haynes as defendants in this cause of action.[2] Spear seeks monetary damages for the alleged violations of his constitutional rights. *Plaintiff's Complaint - Court Doc. No. 1* at 4.[3]

The defendants filed a special report, answer and supporting evidentiary materials addressing Spear's claims for relief. Pursuant to the orders entered herein, the court deems it appropriate to treat this report as a motion for summary judgment. *Order of October 7,*

---

for violations of the Eighth and Fourth Amendments apply to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

[2]The defendants advise that the correct name of Steve Richardson is Steve Richerson. For purposes of this Recommendation, the court will hereinafter refer to this defendant by his correct name.

[3]Although Spear also seeks his release from the city jail, the documents filed in this case establish that he is no longer incarcerated in this or any other facility.

*2005 - Court Doc. No. 17.*  Thus, this case is now pending on the defendants' motion for

summary judgment.  Upon consideration of this motion, the evidentiary materials filed in

support thereof and the plaintiff's response in opposition to the motion, the court concludes

that the defendants' motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th

Cir.2007) (per curiam) (quoting Fed.R.Civ.P. 56(c)).  The party moving for summary

judgment "always bears the initial responsibility of informing the district court of the basis

for its motion, and identifying those portions of the 'pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.

Catrett*, 477 U.S. 317, 323 (1986) (citation to rule omitted).  The movant may meet this

burden by presenting evidence indicating there is no dispute of material fact or by showing

that the nonmoving party has failed to present evidence in support of some element of its

case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of

3

a genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with

evidence beyond the pleadings, that a genuine issue material to his case exists. *Clark v.*

*Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Celotex*, 477 U.S. at 324 (non-

movant must "go beyond the pleadings and ... designate 'specific facts showing that there

is a genuine issue for trial.'"); Fed.R.Civ.P. 56(e) ("When a motion for summary judgment

is made and supported ... an adverse party may not rest upon the mere allegations or denials

of [his] pleading, but [his] response ... must set forth specific facts showing that there is

a genuine issue for trial.").  A genuine issue of material fact exists when the nonmoving

party produces evidence that would allow a reasonable fact-finder to return a verdict in its

favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities.  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, --- U.S. ---, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006).  Consequently,

to survive the defendants' properly supported motion for summary judgment, Spear is

required to produce "sufficient [favorable] evidence" which would be admissible at trial

supporting his claims of various constitutional violations. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is

merely colorable ... or is not significantly probative ... summary judgment may be granted."
*Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing
party's position will not suffice; there must be enough of a showing that the [trier of fact]
could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct.
2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th
Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to
create a genuine issue of material fact and, therefore, do not provide sufficient evidence
to oppose a motion for summary judgment.  *Waddell v. Valley Forge Dental Associates,*
*Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th
Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting
evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d
912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces
nothing beyond "his own conclusory allegations" challenging a defendant's actions);
*Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own
conclusory allegations is not sufficient to oppose summary judgment....").  Hence, when
a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to
establish the existence of an element essential to his case and on which the plaintiff will
bear the burden of proof at trial, summary judgment is due to be granted in favor of the
moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential

element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to

6

a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, --- U.S. at ---, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, Spear fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment.

## II. DISCUSSION OF CLAIMS

### A. Denial of Medical Treatment

Spear complains the defendants acted with deliberate indifference to a knee injury he alleges occurred at the hands of his wife prior to his arrest for domestic violence in the early morning hours of April 13, 2005.[4] Spear further asserts that during his arrest for harassment on April 21, 2005 he injured his knee when being placed in the patrol car. *Plaintiff's Complaint - Court Doc. No. 1* at 5 (Defendant Williams "shoved plaintiff down

---

[4]The defendants dispute Spear's assertion of having "been struck by his wife with a piece of pipe [as] it was apparent from the direction of the wounds, the injuries were self inflicted." *Defendants' Exhibit to the Special Report (Court Doc. No. 16-24) - Affidavit of Jerry Whetstone* at 1; *Defendants' Exhibit to the Special Report (Court Doc. No. 16-23) - Affidavit of Steve Richerson* at 1 (Upon his arrest for domestic violence, Spears "claimed his wife hit him in the leg with a ½' piece of pvc pipe. She and the children denied that. He did have three red marks above his knee which from the angle [of the marks] appeared to be self inflicted. The marks were not affecting his walking.").

7

into the car hitting plaintiff's knee against the shield popping ... [his] knee cap out of place again.").[5] Spear also maintains that "[o]n May 30, 2005, uppond (sic) being arrested again for domestic violence plaintiff jumped through a 2nd story window in his house attempting suicide. Plaintiff was sent to Russell Hospital and treated for cuts & broke toes and for being severely sprayed with pepper spray." *Id*. Next, Spear contends he suffered injuries in an altercation with officers Pearson and Robinson on June 2, 2005 for which he did not receive adequate "follow-up" medical treatment. *Id*. at 6.[6] The defendants deny they acted with deliberate indifference to Spear's injuries and, instead, maintain they provided Spear with appropriate treatment for his injuries.

To prevail on an Eighth Amendment claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that those responsible for providing the treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);

---

[5]Spear remained incarcerated on this harassment charge until May 11, 2005 at 1:00 p.m. Although Spear attaches medical records relevant to a hospital stay beginning on May 12, 2005 in support of his response to the defendants' special report, the treatment provided during this time relates to complaints made by Spear of bleeding from his rectum and abdominal pain which he advised hospital personnel began at 3:00 a.m. on May 12, 2005. *Plaintiff's Exhibit B to the January 12, 2006 Response - Court Doc. No. 25-3* at 13. Thus, neither these complaints nor this treatment related to any medical condition suffered during plaintiff's confinement and this information is therefore irrelevant to the issues pending before the court.

[6]Although Spear identifies the date of this altercation as June 3, 2005, the undisputed evidentiary materials demonstrate the altercation actually occurred on June 2, 2005. After Spear had been brought under control and placed in a cell by officers Pearson and Robinson, Spear banged his head on the bars of the cell. Jail personnel summoned medical help and paramedics arrived to treat plaintiff for a self-inflicted wound caused by Spear "ramm[ing] his head into the [cell] bars." *Plaintiff's January 12, 2006 Response - Court Doc. No. 25* at 3. These documents further establish that on June 3, 2005 jail officials transported Spear to the Russell Medical Center, a local hospital, for further evaluation and additional necessary treatment.

*McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, police/jail officials may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  "In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the [jail] staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977))."  *Harris v. Thigpen*, 941

F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact that prisoner desires a different mode of medical treatment does not amount to deliberate indifference and therefore fails to establish a constitutional violation); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Persons responsible for an inmate's medical care may be held liable under the Eighth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The record before the court establishes that the defendants did not act with deliberate indifference to Spear's medical needs. Specifically, the undisputed evidentiary materials, including relevant jail and medical records, indicate that the defendants provided medical treatment to the plaintiff for his complaints when he sought treatment and his condition warranted treatment. These materials demonstrate that the defendants at various times called paramedics to evaluate the plaintiff's condition and render treatment. Additionally, the defendants on several occasions referred Spear to free-world physicians and the Russell Medical Center for treatment of his respective complaints and injuries.

Upon his entry into the city jail on April 13, 2005, Spear complained to the booking officer of pain in his right knee but he "did not appear to be in any distress and was walking without any difficulty." *Defendants' Exhibit to the Special Report (Court Doc. No. 16-22) - Affidavit of Sabrina Jones* at 1. Ms. Jones contacted the night supervisor for the jail, defendant Richerson, who returned to the jail and "spoke with plaintiff [about his complaint of knee pain.]" *Defendants' Exhibit to the Special Report (Court Doc. No. 16-23) - Affidavit of Steve Richerson* at 1. Richerson "did not observe plaintiff having any problems with his leg or knee and [Spear] was standing and walking around without difficulty and not limping. It was obvious this was not a medical emergency. I informed Plaintiff I would make an appointment for him with a doctor. Plaintiff said he would take care of it when he got out of jail." *Id.* Spear made no further complaint to jail officials with respect to his knee prior to his release from the jail two days later on April 15, 2008. Upon his release, Spear did, in fact, proceed to the Russell Medical Center where he complained of pain in his right knee. The attending nurse noted some swelling. An x-ray, however, revealed "[no] acute fracture or dislocation of the right knee. No joint effusion." *Plaintiff's Exhibit A to the January 12, 2006 Response - Court Doc. No. 25-2* at 5.

A week or so after his April 21, 2005 arrest for harassment, Spear complained to jail personnel of knee pain and "request[ed] medical attention...." *Defendants' Exhibit G to the Affidavit of Willie G. Robinson (Inmate Request Form) - Court Doc. No. 16-9* at 1. Based on this request, the jail staff scheduled an appointment for Spear with a free-world

physician. A correctional officer transported Spear to this appointment. *Defendants'*
*Exhibit F to the Affidavit of Willie G. Robinson - Court Doc. No. 16-8* at 10. The physician
examined Spear and provided a good prognosis. *Id.* After completion of this examination,
the officer transported Spear back to the Alexander City Jail. Within a few minutes of his
return to the jail, Spear obtained two property bonds and gained his release from
confinement. *Id.* at 11.

On June 1, 2005, the plaintiff sustained injuries when in an attempt to commit
suicide, and at the same time flee officers responding to a domestic violence call, he
jumped through a second story window and struggled with officers in their efforts to pull
him back inside the window. *Defendants' Exhibit to the Special Report (Court Doc. No.*
*16-24) - Affidavit of Jerry Whetstone* at 1; *Plaintiff's Complaint - Court Doc. No. 1* at 5.
To gain control of Spear and ensure failure of his suicide attempt, an officer sprayed Spear
with a chemical spray. *Defendants' Exhibit I to the Affidavit of Willie G. Robinson - Court*
*Doc. No. 16-11* at 10. Upon bringing Spear under control, officers immediately requested
that paramedics be dispatched to treat Spear, removed Spear from the home into fresh air
and decontaminated him of the chemical spray with water. *Id.* Paramedics arrived and
provided treatment to Spear for his injuries. Defendant Whetstone then transported Spear
to the Russell Medical Center for additional evaluation and treatment.

The attending nurse noted Spear had "lacerations to face, hands & knee.... was ...
maced" and also complained of "pain in toes on [left] foot." *Plaintiff's Exhibit C to the*

*January 12, 2006 Response - Court Doc. No. 25-4* at 3. An X-ray revealed a "minimally displaced fracture in the third toe...." *Id.* at 5. Spear's second, third and fourth "toe[s] on [left] foot buddy taped together. [Patient] tolerated [this procedure] well." *Id*. at 4. Upon completion of Spear's examination and treatment, defendant Whetstone transported Spear to the Alexander City Jail and booked Spear on a domestic violence charge. At this time, jail personnel placed Spear on suicide watch and he remained on such watch until his release from custody on July 17, 2005.

On June 2, 2005, Spear, while awaiting a scheduled municipal court appearance, placed a telephone call to his mother. *Plaintiff's Complaint - Court Doc. No. 1* at 6; *Defendants' Exhibit to the Special Report (Court Doc. No. 16-2) - Affidavit of Willie G. Robinson* at 2. Defendant Robinson approached Spear in an effort to escort him to court and issued several orders for Spear to end the phone call, all of which Spear ignored. Robinson therefore "hung the phone up" at which time Spear became verbally abusive and attempted to strike Robinson. *Defendants' Exhibit to the Special Report (Court Doc. No. 16-2) - Affidavit of Willie G. Robinson* at 2; *Plaintiff's January 12, 2006 Response - Court Doc. No. 25* at 3 ("Robinson took the phone from Plaintiff. Plaintiff attempted to confront Robinson."). Spear and Robinson struggled causing them to fall to the floor. Officer Pearson arrived and assisted Robinson in subduing the plaintiff. *Defendants' Exhibit I to the Affidavit of Willie G. Robinson - Court Doc. No. 16-11* at 14.

Upon gaining control of Spear, the officers placed Spear in an isolation cell at which

time Spear began "ramm[ing] his head into the bars...."  *Plaintiff's Complaint - Court Doc.
No. 1 at 3*; *Defendants' Exhibit to the Special Report (Court Doc. No. 16-2) - Affidavit of
Willie G. Robinson* at 2.  Jail personnel called paramedics and paramedics responded to the
jail for assessment and treatment of Spear's injuries.  Spear advised the paramedics "he ran
his head into the bars...."  *Defendants' Exhibit K to the Affidavit of Willie G. Robinson -
Court Doc. No. 16-13*.  The paramedics noted only a "small abrasion to [Spear's] right
forehead" for which they provided treatment.  *Id*.  Spear made no further complaints to the
paramedics at this time and they observed no additional injuries.  *Id*.

On June 3, 2005, Spear complained to jail officials of "pains throughout his body
.... and Captain Robinson ... transported Mr. Spear to Russell Medical Center" for
evaluation of his complaints.  *Defendants' Exhibit I to the Affidavit of Willie G. Robinson -
Court Doc. No. 16-11 at 18*.  Nurse Sandra Carlisle examined Spear upon his arrival at the
hospital.  Spear advised the nurse that he thought his left "rib may be [fractured]" and left
"foot may be broken."  *Plaintiff's Exhibit D to the January 12, 2006 Response - Court
Doc. No. 25-5 at 3*.  X-rays were taken of Spear's chest, left foot and left ribs the results
of which indicated no injuries related to the June 2, 2005 altercation.  *Id*. at 5-7.
Specifically, the impressions indicated no change in Spear's lungs or heart since September
3, 2003, "[n]o appreciable change in the left 3rd toe ... fracture [when compared to the
fracture noted in the June 1, 2005 X-ray].  No new fracture identified.....  No displaced left
rib fracture identified."  *Id*.  Dr. Deborah Tisdale applied a boot cast/orthopedic shoe to

Spear's left foot and ordered that he wear the shoe for six weeks. *Id*. at 10-11; *Defendants' Exhibit I to the Affidavit of Willie G. Robinson - Court Doc. No. 16-11* at 19. She also prescribed Motrin every 6 hours for pain. *Id*. Hospital personnel released Spear to jail officials with no further instructions. Jail personnel provided Spear access to the medication as prescribed by Dr. Tisdale.

On June 10, 2004, Spear complained of chest pain and breathing difficulty. Jail personnel summoned paramedics to provide treatment to Spear for these complaints. *Defendants' Exhibit L to the Affidavit of Willie G. Robinson - Court Doc. No. 16-14*. The paramedics examined Spear, obtained his vital signs and ran an electrocardiogram. *Id*. Spear advised that his chest pain and shortness of breath had subsided and refused transport to the hospital. *Id*.

Under the circumstances of this case, it is clear that the medical treatment provided by the defendants was neither grossly incompetent nor inadequate. Although Spear asserts he should have, at times, received additional and/or different treatment, this assertion, without more, fails to establish deliberate indifference. *Hamm*, 774 F.2d at 1575; *Garvin*, 236 F.3d at 898; *Franklin*, 662 F.2d at 1344. It is undisputed that Spear received medical treatment as dictated by injuries suffered upon arrest and medical complaints made during his confinement in the city jail. His mere desire for a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Spear has failed to present any evidence which indicates the defendants knew that the manner in which they

15

provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to any serious medical need suffered by Spear. Summary judgment is therefore due to be granted in favor of the defendants.

### B. Claims of Excessive Force During Arrest

Spear references two separate incidents regarding the use of force against him to effectuate his arrest. After review of the facts, taken in a light most favorable to Spear, it is clear that the arresting officers did not violate Spear's constitutional rights.

> "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee,* 284 F.3d at 1197 (citing *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)). The question is whether [the arresting officer] behaved reasonably in the light of the circumstances before him. *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002).
> We have said that "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee,* 284 F.3d at 1198. "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Id.* at 1197 (quoting *Graham,* 109 S.Ct. at 1871-72). "Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard,* 311 F.3d at 1347 (internal quotation marks and citations omitted).

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1244 (11th 2003). The court further

16

held that "[chemical] spray is an especially noninvasive weapon and may be one very safe and effective method of handling a violent suspect who may cause further harm to himself or others." *Id*. at 1245; *Vinyard*, 311 F.3d at 1348 (use of a chemical spray on a suspect who is either resisting arrest or refusing requests of police "is a very reasonable alternative to escalating a physical struggle with an arrestee.").

1. The April 21, 2005 Arrest.  On April 21, 2005, defendant Williams arrested the plaintiff on an outstanding warrant for harassment. *Defendants' Exhibit to the Special Report - Court Doc. No. 16-25 (Affidavit of Eddie Williams)* at 1; *Plaintiff's Complaint - Court Doc. No. 1* at 5.  Spear complains that while being placed in the patrol car, Williams caused him to hit his "knee against the shield popping plaintiff knee cap out of place...." *Plaintiff's Complaint - Court Doc. No. 1* at 5.  Other than this conclusory allegation, Spear presents no evidence that he suffered any injury at this time.  Williams denies Spear's allegations.  "I did not shove plaintiff into the police car....  Plaintiff voluntarily entered the police car....  I drove plaintiff to the jail and walked him inside....  He was walking without any difficulty and did not make any complaints about his leg or knee [at this time]." *Defendants' Exhibit to the Special Report - Court Doc. No. 16-25 (Affidavit of Eddie Williams)* at 1.

As previously noted, "'Fourth Amendment jurisprudence has long recognized that the right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion ... to effect it'." *Lee*, 284 F.3d at 1197 (quoting *Graham*, 490 U.S. at

17

396, 109 S.Ct. at 1871-1872). Assuming Spear's version of events is true, he has stated no constitutional violation as the use of some force to ensure Spear's placement in the police vehicle was reasonable under the Fourth Amendment. Spear has failed to present any evidence which demonstrates that officer Williams used excessive force in effectuating his arrest. It is obvious from the pleadings filed herein that defendant Williams used no more than a *de minimis* amount of force when placing Spear in the car. Such does not constitute the use of excessive force. *See Rodriguez v. Farrell*, 294 F.3d 1276, 1278-1279 (11th Cir. 2002). Summary judgment is therefore due to be granted in favor of the defendants on this claim.

2. The June 1, 2005 Suicide Attempt. On June 1, 2005, law enforcement officials traveled to the residence of Spear and his wife in response to a report of domestic violence against Spear. *Defendants' Exhibit to the Special Report (Court Doc. No. 16-24) - Affidavit of Jerry Whetstone* at 1. At this time, Spear fled the scene and officers were unable to locate him. *Id.* Officers subsequently received a second call regarding this same offense and upon their arrival at the residence, they "received permission from [Spear's] wife to enter the house and inspect it, but could not find the plaintiff." *Id.* After a short period of time, defendant Whetstone "heard movement inside the house.... [Whetstone and other officers at the scene responded to the noise] and conducted another search. We found the plaintiff hiding under a child's bed [on the second floor of the residence]. We talked to plaintiff and he cam[e] out from under the bed, he came up slow in a bent over position

18

[surrounded by the officers].... Plaintiff lunged through a window and got his head, left arm, and left leg outside the window. The three of us grabbed plaintiff and held him preventing him from falling. However, we could not get him inside because he was resisting and refusing to cooperate. Finally, one of the officers sprayed him with mace, which allowed me to grab onto him when he loosened his hold and began pulling him in through the window. We still had to force him inside and to the floor as he would not cooperate. Plaintiff was cuffed and taken out to the front porch. The paramedics were called and [Spear] had minor lacerations [due to his jump through the window]. I drove him to the Emergency Room [for further evaluation and treatment], then drove him to the jail where he was booked." *Id.*; *Defendants' Exhibit I to the Affidavit of Willie G. Robinson - Court Doc. No. 16-11* at 10 (When "Spear came out from under the bed, he came to his feet and lunged toward the bedroom window knocking Officer Hodge to the side[.] Mr. Spear continued through the closed window with his head. We all grabbed Mr. Spear in an attempt to prevent him from falling to the ground [from this second story window.] Mr. Spear continued to struggle while busting out the glass with his fist in an attempt to break out the entire window. After several minutes, Officer Hodge sprayed Mr. Spear in the face with O.C. Spray. All Officers were finally able to get Mr. Spear back inside the window. Mr. Spear was then handcuffed.... Fire Medics were requested to respond to the scene and Mr. Spear was then taken outside to get air and was seen by fire medics. Mr. Spear was then decontaminated with water and the O.C. spray was washed

19

off.  Officer Whetstone escorted Mr. Spear to the hospital....  Officer Hodge sustained two minor lacerations to his right hand....").

To the extent Spear seeks to present a claim that defendants Whetstone and Williams violated his Fourth Amendment right to be free from excessive force with respect to the actions undertaken by the officers in preventing his suicide and effectuating his arrest, the court finds that under the undisputed facts this claim entitles Spear to no relief. Spear concedes that at the time of this arrest he sought to commit suicide and thereby evade arrest by attempting to jump from a second story window.  *Plaintiff's Complaint - Court Doc. No. 1* at 5.  Spear also does not dispute that he refused to cooperate with the arresting officers, resisted the officers efforts to place him under arrest and continued to struggle with them in an effort to complete his jump from the window.  *Id*.  In light of the forgoing, the court concludes that the force utilized by the arresting officers "was proportionate to the potential threat and reasonable under the circumstances."  *McCormick*, 333 F.3d at 1245.  Thus, no constitutional violation occurred at this time.

## C.  Excessive Force - Jail Incident

On June 2, 2005, Spear was awaiting a court appearance when he placed a phone call to his mother.  *Plaintiff's Complaint - Court Doc. No. 1* at 6; *Defendants' Exhibit to the Special Report (Court Doc. No. 16-2) - Affidavit of Willie G. Robinson* at 2.  Defendant Robinson approached Spear and issued several orders for Spear to end the phone call so that he could be escorted to his court appearance.  Spear ignored all of Robinson's orders.

Robinson therefore "hung the phone up" at which time Spear became verbally abusive and attempted to strike Robinson. *Defendants' Exhibit to the Special Report (Court Doc. No. 16-2) - Affidavit of Willie G. Robinson* at 2; *Plaintiff's January 12, 2006 Response* at 3 (Plaintiff confronted Robinson for taking the phone.); *Defendants' Exhibit to the Special Report (Court Doc. No. 16-21) - Affidavit of Patrick Pearson* ("I did see plaintiff take a swing at Captain Robinson, after being told to hang up the phone since his case was being called. Plaintiff refused to hang up the phone and [cursed] the Captain and swung at him."). Officer Pearson intervened in an effort to aid Robinson in subduing Spear. A struggle ensued causing Robinson, Pearson and Spear to fall to the floor. *Defendants' Exhibit to the Special Report (Court Doc. No. 16-21) - Affidavit of Patrick Pearson* ("I assisted in grabbing the plaintiff's arm and taking him to the floor ... sustaining ... small cut[s] to my right eye and ... one ... finger[].")*; Defendants' Exhibit I to the Affidavit of Willie G. Robinson - Court Doc. No. 16-11* at 14 (same).

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers,* 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson,* at 7-8, 112 S.Ct.

21

995; *see also Whitley,* 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman,* 97 F.3d 499, 505 (11th Cir.1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley,* 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson,* 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Taking the claims presented by the plaintiff as true, this court concludes that Spear fails to establish the use of excessive force. The undisputed facts of this case demonstrate that Spear disobeyed several orders, confronted defendant Robinson and attempted to strike this officer. A struggle occurred due to plaintiff's aggressive behavior and officers used only that force necessary to control Spear. Furthermore, the undisputed evidentiary materials demonstrate that although Spear complained of rib and foot pain he suffered no discernable injuries as a result of this incident, while officer Pearson sustained lacerations to his eye and fingers.

The record clearly demonstrates that the actions of defendant Robinson were undertaken in this officer's effort to defend himself from Spear's attack and restore discipline. Additionally, the officers did not subject Spear to force once he posed no further threat to them or himself. Consequently, it is clear that there was a need for the use of force and the amount of force used was reasonable in light of the imminent threat presented by Spear. The court therefore concludes that the officers did not act maliciously

and sadistically in using force against Spear during this incident and they are therefore entitled to summary judgment on this claim.

### D.  Access to the Court

Spear complains that the defendants denied him access to the court.  The law directs that incarcerated persons are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court clarified and limited the right to assistance set forth in *Bounds*.  Specifically, the Court held that "an inmate alleging a violation of *Bounds* must show actual injury" arising from the alleged inadequacies in the law library, legal assistance program or access provided by officials. *Lewis*, 518 U.S. at 349.  In identifying the particular right protected by *Bounds*, the Court explained that "*Bounds* established no ... right [to a law library or to legal assistance].  The right that *Bounds* acknowledged was the (already well-established) right of **access to the courts**....  [P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id*. at 350-351 (emphasis in original) (citations omitted).  The Court further opined *Bounds* did not require "that the State ... enable the prisoner to **discover grievances**, and to **litigate effectively** once in court....  To demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is [not

23

something] ... the Constitution requires." *Id.* at 354 (emphasis in original).

The Court similarly rejected the argument that the mere claim of a systemic defect, without a showing of actual injury, presented a claim sufficient to confer standing. *Id.* at 349. Moreover, *Lewis* emphasized that a *Bounds* violation is related to the lack of an inmate's capability to present claims. 518 U.S. at 356. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability -- the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When any inmate ... shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because this capability of filing suit has not been provided, he demonstrates" the requisite actual injury. *Lewis*, 518 U.S. at 356. Finally, the Court discerned that the injury requirement is satisfied only when an inmate has been denied "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] convictions or conditions of confinement.... [I]t is that capability, rather than the capability of turning pages in a law library, that is the touchstone." *Id.* at 356-357. "[T]he Constitution does not require that prisoners ... be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 360. The Court admonished that federal courts should allow prison officials to determine the best method of ensuring that inmates are provided a reasonably adequate opportunity to present

their nonfrivolous claims of constitutional violations to the courts.  *Id*. at 356.  A federal district court must "'scrupulously respect[] the limits on [its] role,' by 'not ... thrust[ing] itself into prison administration' and instead permitting '[p]rison administrators [to] exercis[e] wide discretion within the bounds of constitutional requirements.'  [*Bounds*, 430] U.S. at 832-833, 97 S.Ct. at 1500."  *Id*. at 363.

Spear has utterly and completely failed to come forward with any evidence that the actions about which he complains deprived him of the ***capability*** of pursing claims in this or any other court.  Throughout the proceedings in this case, Spear has repeatedly demonstrated that he is proficient and prolific at presenting and arguing claims to the court of his choice.  Nothing before the court indicates that the actions about which Spear complains in any way improperly impeded or adversely affected his efforts to pursue nonfrivolous legal claims.  Consequently, Spear has failed to establish the requisite injury.  *Lewis*, 518 U.S. at 356.  Summary judgment is therefore due to be granted in favor of the defendants on this claim.  *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### E.  Conditions of Confinement

Spear complains that during his incarceration at the Alexander City Jail he was subjected to overcrowding, poor ventilation, inadequate heating, low lighting, excessive noise and insufficient plumbing facilities.  Spear further complains that jail personnel supplied tattered linens and failed to provide organized outdoor recreational activities or rehabilitative programs.  The defendants filed evidentiary materials which refute these

claims.

Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (19891). "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan***,** 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994). A constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, ... and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-1983. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, Spear is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate

indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) ("To be deliberately indifferent, Defendants must have been 'subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'"' *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists-and the prison official must also 'draw that inference.' *Farmer,* 511 U.S. at 837, 114 S.Ct. at 1979.").

The living conditions within a jail will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the ... crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency .... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below

constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

Despite his contentions regarding the conditions of confinement, Spear has failed to establish that these conditions denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347. Furthermore, Spear has failed to demonstrate any deliberate indifference or reckless disregard by the named defendants with respect to his health or safety. Specifically, Spear has failed to identify any particular incident or condition from which the defendants could infer that a substantial risk of serious harm existed. Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### F.  Judge Randy Haynes

Spear complains that Randy Haynes, a municipal judge, failed to issue appropriate orders regarding a mental evaluation necessary to determine plaintiff's mental competency. *Plaintiff's Complaint - Court Doc. No. 1* at 6. The law is well settled that "a judge is immune from a suit for money damages." *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 287 (1991). Moreover, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages." 502 U.S. at 11, 112 S.Ct. at 288; *Forrester v. White*, 484 U. S.

219, 227-229 (1988) (a judge is absolutely immune from civil liability for acts taken pursuant to his judicial authority).  It is clear that all of the plaintiff's allegations regarding Judge Haynes emanate from actions taken by this defendant in his judicial capacity within the scope of his jurisdiction.  Judge Haynes is therefore vested with judicial immunity to suit and, as such, the claims lodged against this defendant are due to be dismissed.

### G.  Municipal Clerk Louise Pritchard

Spear presents no specific claims against Ms. Pritchard, a municipal clerk for Alexander City, Alabama.   Nevertheless, it is clear from a review of the complaint that Spear names Pritchard as a defendant due to actions undertaken in accordance with orders issued by the municipal court and/or pursuant to her authority as a municipal clerk.  For such actions, Pritchard is entitled to absolute immunity from suit.  *Williams v. Wood*, 612 F.2d 982, 985 (5th Cir. 1980) (absolute immunity of the judge extends to a court clerk who acts "under command of court decrees or under explicit instructions of a judge...."); *Scott v. Dixon*, 720 F.2d 1542 (11th Cir. 1983) (Where a clerk acts pursuant to authority granted by law and acts on behalf of a court, the clerk is absolutely immune when sued under 42 U.S.C. § 1983 because she is performing a judicial function.).

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

29

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that  on or before April 28, 2008 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th  day of April, 2008.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE